United States Court of Appeals
Fifth Circuit

**F I L E D**

February 17, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No.  05-10059

UNITED STATES OF AMERICA,

Plaintiff-Appellee

VERSUS

RONALD H. RIVA, III,

Defendant-Appellant

Appeal from the United States District Court
For the Northern District of Texas

Before DAVIS, SMITH, and DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendant-Appellant, Ronald H. Riva, appeals his sentence imposed on a guilty-plea for unlawful possession of a firearm.  Appellant argues that the district court erred by enhancing his sentence under U.S.S.G. § 4B1.2(a) based on its conclusion that his prior Texas conviction for unlawful restraint of a person less than 17 years of age[1] was a "crime of violence".  Because we agree with the

---

[1]  The Texas unlawful restraint statute provides: "(a) A person commits an offense if he intentionally or knowingly restrains another person...(c) An offense under this section is a Class A

district court that this offense is a "crime of violence," we affirm Riva's sentence.

## I.

Ronald H. Riva, III, pleaded guilty to an indictment charging him with possession of a firearm by a convicted felon. 18 U.S.C. § 922(g)(1). The presentence report ("PSR") recommended that the district court enhance Riva's sentence pursuant to U.S.S.G. § 2K2.1 because Riva had been previously convicted of two crimes of violence—unlawful restraint of a person less than 17 years of age and aggravated assault. Riva objected to the PSR, arguing that his Texas unlawful restraint conviction was not a crime of violence under U.S.S.G. § 4B1.2. The district court overruled the objection, adopted the findings of the PSR, and sentenced him to 96 months imprisonment and three years supervised release. This appeal follows.

## II.

In reviewing a sentence under the sentencing guidelines, we review the interpretation or application of the guidelines *de novo*.

---

misdemeanor except that the offense is: (1) a state jail felony if the person restrained was a child younger than 17 years of age; or (2) a felony of the third degree if: (A) the actor recklessly exposes the victim to a substantial risk of serious bodily injury..." TEX. PEN. CODE ANN. § 20.02(a) (Vernon 2002). "'Restrain' means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty by moving the person from one place to another or by confining the person. Restraint is 'without consent' if it is accomplished by: (A) force, intimidation, or deception." TEX. PEN. CODE ANN. 20.01 (Vernon 2002).

2

United States v. Charles, 301 F.3d 309, 312-13 (5th Cir. 2002)(*en banc*).

Riva was sentenced under § 2K2.1(a)(2) of the Sentencing Guidelines, which provides for a base offense level of 24 if a defendant has at least two prior felony convictions for crimes of violence. That section adopts the definition of "crime of violence" as provided in U.S.S.G. § 4B1.2 and its commentary.[2]

---

[2] Section 4B1.2(a) defines "crime of violence" as:

[A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that–

   (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

   (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S.S.G. § 4B1.2(a) (emphasis added).

The commentary further provides:

"Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (*i.e.*, expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another. U.S.S.G. § 4B1.2 (application note 1).

3

The Government concedes that subsection (a)(1) of § 4B1.2 is inapplicable because "use of force" is not an element of the Texas crime of unlawful restraint. See TEXAS PEN. CODE ANN. § 20.02 (Vernon 2002). Thus, the issue we must decide is whether unlawful restraint of a person less than 17 years of age is a crime of violence under the residual clause of § 4B1.2(a)(2) because it "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2).

In determining whether a prior conviction is a "crime of violence" under the residual clause of § 4B1.2(a)(2), this court takes a categorical approach and may only look to the relevant statute and in certain circumstances to the conduct alleged in the charging document. United States v. Charles, 301 F.3d 309, 313-14 (5th Cir. 2002). Under Charles, a prior conviction is considered a crime of violence under the residual clause "only if, from the fact of the indictment, the crime charged or the conduct charged presents a serious potential risk of injury to a person. Injury to another need not be a certain result, but it must be clear from the indictment that the crime itself or the conduct specifically charged posed this serious potential risk." Id. at 314. When a statute provides a list of alternative methods of committing an offense, we may look to the charging papers to determine by which method the crime was committed in a particular case. See United States v. Calderon-Pena, 383 F.3d 254, 258 (5th Cir. 2004); United States v. Bonilla-Munqia,422 F.3d 316, __ (5th Cir. 2005).

4

The information to which Riva pleaded guilty charged that he "intentionally and knowingly by force, intimidation, and deception, [did] restrain Sage Wheatley, a child younger than 17 years of age, without her consent, by restricting the movements of the said Sage Wheatley, to wit, by locking her in a closet, against the peace and dignity of the State." Appellant argues that United States v. Houston, 364 F.3d 243 (5th Cir. 2004) applies in the instant case. In Houston we held that "[i]f an indictment is silent as to the offender's actual conduct, we must proceed under the assumption that his conduct constituted the least culpable act satisfying the count of conviction." Id. at 246. See also United States v. Insaulgarat, 378 F.3d 456, 467 (5th Cir. 2004). The Texas unlawful restraint statute is written disjunctively, and the offense can be committed by restraining a person by force, intimidation, or deception. As indicated above, however, the information to which Riva pleaded guilty charged Riva conjunctively by alleging that he restrained another person by force, intimidation, and deception. Appellant argues that because prosecutors generally charge offenses in the conjunctive but prove them in the disjunctive, the bill of information does not reveal whether appellant pleaded guilty to restraining a person by force, intimidation, *or* deception.

Appellant further contends that under the least culpable means approach set forth in Houston, this court must assume that Riva locked a child under the age of 17 in a closet by using deception.

5

The Government, on the other hand, argues that the information charged Riva with restraining a child by force, intimidation, and deception and that when Riva pleaded guilty to the information, he admitted that he used all three methods. Even if we assume that Riva's argument is correct, and that under the "least culpable means" analysis the restraint was accomplished by deception, we are still persuaded that unlawfully restraining a child under the age of 17 by confining her is a crime of violence.[3]

Riva maintains that while locking a child under the age of 17 in a closet by means of deception could cause a serious potential risk of physical injury, it does not *necessarily* implicate that risk.[4] We disagree.[5] We agree with the Government that a serious

_____

[3] Although not raised by the parties, we note that the Texas statute for unlawful restraint of a child under the age of 17 can also be accomplished disjunctively by either 1) moving the person from one place to another or 2)confining the person. As discussed above, we may look to the conduct in the indictment to determine which disjunctive element the defendant committed. See Calderon-Pena, 383 F.3d at 258. The allegation of the information charging Riva with locking a child in a closet, makes it clear that the state charged Riva with confining the child rather than moving her from one place to another.

[4] Appellant cites several cases to support his argument, including United States v. Houston, 364 F.3d 243(5th Cir. 2004)and United States v. Insaulgarat, 378 F.3d 456 (5th Cir. 2004). However, the reasoning in those cases does not apply in the instant case. In Houston, we held that statutory rape, under a least culpable means analysis, would not necessarily be a crime of violence because "sexual intercourse between a 20 year old male and female a day under 17, free of aggravating circumstances such as the victim's *lack of consent* or the offender's use of violence, does not present a serious potential risk of physical injury...." 364 F.3d at 248 (emphasis added). Insaulgarat involved a conviction for aggravated stalking. In that case, we found that the conviction could be for phone calls or suicide threats, which

6

potential risk of injury is created when a child is confined without his or her consent.  Children are more vulnerable than adults, and a child locked in a closet is at risk for dehydration, malnourishment, infection, and physical injuries in escape attempts.

Appellant also argues that because the information did not charge him with a third-degree felony for recklessly exposing the victim to a substantial risk of serious physical injury, it follows that Riva's offense did not present a serious potential risk of injury to another and does not qualify as a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a).  Riva's argument is not persuasive. For an offense to qualify as a crime of violence, the Government need only prove that commission of the offense created

---

do not involve conduct that presents a potential for physical injury.  Insaulgarat, 378 F.3d at 470-71.  Unlike the cases Appellant cites, we are persuaded that any violation of Texas Penal Code 20.02(c)(1) by confining a person creates a serious potential risk of physical injury.

[5]  Other Circuits have also found that similar unlawful restraint statutes constitute a crime of violence because "by [their] nature, [they] present[] a serious potential risk of physical injury to another."  United States v. Nunes, 2005 WL 2108672, ___ F.3d __ (11th Cir. 2005). See also United States v. Wallace, 326 F.3d 881, 886-87 (7th Cir. 2003)and United States v. Swanson, 55 Fed. Appx. 761, 762 (7th Cir. 2003) (stating that "[a] risk of violent confrontation is inherent in a crime...that involves restraining another person against her will.") and.  Further, other circuits have found that similar offenses  such as kidnapping and false imprisonment by deception that do not have physical force as an element present a serious risk of physical injury, and are "crimes of violence."  See United States v. Zamora, 222 F.3d 756, 764-65 (10th Cir. 2000); United States v. Williams, 100 F.3d 50, 52-3 (9th Cir. 1997); United States v. Kaplansky, 42 F.3d 320, 324 (6th Cir. 1994)(en banc).

a serious potential for physical injury.  On the other hand, to establish the third degree felony under Texas Penal Code § 20.02(c)(2)(a), the state is required to prove that the defendant exposed the victim to a <u>substantial</u> risk (rather than a potential risk) to <u>serious</u> physical injury (rather than physical injury). The fact that the state prosecutors declined to charge Appellant with the third degree felony offense does not preclude a crime of violence enhancement for the state jail felony child restraint offense.

III.

Because we find that unlawful restraint by confinement is a crime of violence whether accomplished by force, intimidation, or deception, we affirm Riva's sentence.

AFFIRMED.

8

DENNIS, Circuit Judge, dissenting:

Because I disagree with the majority's application of the "least culpable means" approach, its interpretation of our case law to hold that a crime is a crime of violence where it does not present a risk of violence "by its nature," and its failure to apply our precedent in this area, I respectfully dissent.

As the majority mentions, the law in our Circuit has applied a least culpable means analysis to the determination of whether a particular crime is a crime of violence. Under this analysis, the court must look to the statute and the indictment and ask whether there is a possible way in which the charged offense could be violated without a serious potential risk of physical injury to another. If there is a hypothetical way the violation could have occurred without this risk, then the crime is not "by its nature" a crime of violence. The watershed case in this area of law is United States v. Charles, an en banc decision which held that the act of stealing a car and driving it away without the owner's consent did not constitute a crime of violence because it did not "by its nature" give rise to these serious risks. 301 F.3d 309, 314 (5th Cir. 2002). The Charles case has been followed by a number of others, which uniformly apply the least culpable means analysis.

This analysis is rooted in the wording of the commentary to the sentencing guidelines, which includes a residual clause making a

crime a "crime of violence" if it "by its nature, presented a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2 (application note 1). While some panels have used the phrase "necessarily," I understand it to be synonymous with and derived from the phrase "by its nature."

The least culpable means analysis stems from the decision in Charles, in which we held en banc "that a crime is a crime of violence under § 4B1.2(a)(2) only if, from the face of the indictment, the crime charged or the conduct charged presents a serious potential risk of injury to a person. Injury to another need not be a certain result, but it must be clear from the indictment that the crime itself or the conduct specifically charged posed this serious potential risk." 301 F.3d at 314. And in our en banc decision we also held that Application Note 1, by stipulating that residual clause crimes must "by [their] nature" present a "serious potential risk of physical injury to another," calls for a categorical inclusion or exclusion of crimes and/or conduct." Id. Perhaps as significantly, in Charles we overwhelmingly rejected the arguments of three dissenters who would have held that motor vehicle theft is a crime of violence based on their notion that the offense always involves a "serious potential risk of physical injury" because this language requires only a finding that there is a "significant possible chance" of physical injury in each theft, a fact which the three dissenters were

-10-

prepared to take judicial notice or use common sense to find. 301 F.3d at 314-15 (Barksdale, J., dissenting).

The dissenters' position has been rejected in all of our subsequent panel opinions on the subject, which have uniformly applied the Charles rationale to ask whether the hypothetical least culpable means of violating the indictment at issue would involve a serious potential risk of physical injury. See United States v. Montgomery, 402 F.3d 482, 487-88 (5th Cir. 2005) (holding that we must ask whether "it was possible to commit the prior offense without employing conduct that entailed a serious potential risk of physical injury" and that the crime of retaliation in Texas was not a crime of violence because "there are numerous ways that this statute can be violated without posing a significant risk of physical harm"); United States v. Valenzuela-Quevedo, 407 F.3d 728, 732 (5th Cir. 2005) (holding that it was a crime of violence to shoot at a car across a highway because even the least culpable hypothetical where the defendant thought no one was in the vehicle or near it involved risk of physical injury); United States v. Houston, 364 F.3d 243, 246 (5th Cir. 2004) (holding that statutory rape was not a crime of violence because the hypothetical "consensual sexual intercourse between a 20 year old male and a female a day under 17" did not present a serious potential risk of physical injury); United States v. Insaulgarat, 378 F.3d 456, 470 (5th Cir. 2004) (holding that stalking was not a crime of violence

because the "harassment" alleged could hypothetically have been accomplished via phone calls under the indictment); <u>United States v. Turner</u>, 349 F.3d 833, 836 (5th Cir. 2003) (holding that burglary of a building was not a crime of violence because it could not be more dangerous than vehicular theft as in <u>Charles</u>).

While there are a few cases that seem to take different approaches, they are all distinguishable as having special circumstances. For example, in <u>United States v. Golding</u>, the court held that unlawful possession of a machine gun was a crime of violence because Congress had declared in other legislation that machine guns are a weapon of war inherently involve a risk of violence. 332 F.3d 838, 842 (2003). This case followed the logic of <u>United States v. Serna</u>, a pre-<u>Charles</u> case that held that unlawful possession of a sawed-off shotgun was a crime of violence because of Congressional pronouncements in other legislation to that effect. 309 F.3d 859, 863 (5th Cir. 2002). The court in <u>Serna</u> relied on Congress's expression in the National Firearms Act that a sawed-off shotgun is primarily used for violent purposes, this court's conclusion in <u>United States v. Jennings</u> that Congress's primary reason for criminalizing such weapons is the virtual inevitability of violence resulting from their unregistered possession, and the decisions of several other circuits finding possession of such a sawed off shotgun to be a crime of violence. While these cases did not apply the least culpable means approach,

they involved a special situation in which Congress had essentially decided the issue of whether a crime was a crime of violence through statements of legislative intent. We have no similar statements here as to the inherent danger of locking children in closets, and the general Texas crime of unlawful restraint in this case was not legislatively designed to specifically address that danger.

One other potentially inconsistent case is United States v. Ruiz, where the court held that the crime of escape was a crime of violence because every escape was inherently a powder-keg scenario. 180 F.3d 675, 677 (5th Cir. 1999). This is another case issued prior to the watershed Charles decision, and again it is distinguishable. The panel there found persuasive the Tenth Circuit view that "every escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so...." Id. at 677 (quoting United States v. Mitchell, 113 F.3d 1528, 1533 (10th Cir. 1997)). Thus, the courts have, in effect, found the federal statute aimed specifically at escape crimes to implicitly contain a policy statement that every federal escape by law poses a threat of physical injury regardless of the underlying factual situation. The holding of Ruiz is that all conceivable ways to violate the escape statute pose a serious potential risk of physical injury. Accordingly, cases like Ruiz, in which the

-13-

courts, rightly or wrongly, have held that any violation of a particular statute implementing a Congressional policy per se creates serious potential risk of physical injury, are not inconsistent with the general rule applied by the mainstream of our cases. Instead, <u>Ruiz</u> resolved the question by holding that even the least culpable means of violating that statute involved a serious potential risk of physical injury.

The majority's decision fails to apply the required hypothetical least culpable means approach. The majority opinion holds that the potential risks of dehydration, malnourishment, infection, and physical injuries in escape attempts make the crime before us a crime of violence, but it fails to ask whether the crime here could have been committed under the wording of the indictment in a way that would have avoided these risks.

Because the defendant pled guilty to an indictment alleging the use of force, intimidation, and deception, we must consider the hypothetical ways in which the crime could have been committed using the least culpable method - deception. <u>See Omari v. Gonzales</u>, 419 F.3d 303, 3-8, n. 10 (5th Cir. 2005)("Indictments often allege conjunctively elements that are disjunctive in the corresponding statute, and this does not require either that the government prove all of the statutorily disjunctive elements or that a defendant admit to all of them when pleading guilty." (citing <u>Valansi</u>, 278 F.3d at 216 n. 10 (5th Cir. 2002); <u>United States v. McCann</u>, 465

F.2d 147, 162 (5th Cir. 1972)). In addition, in the particular context of the application of the least culpable means test, where "an indictment is silent as to the offender's actual conduct, we must proceed under the assumption that his conduct constituted the least culpable act satisfying the count of conviction." United States v. Houston, 364 F.3d 243, 246 (5th Cir. 2004). Under the Omari standard, the prosecutor need prove only one of the three alleged methods, and here the use of deception is the "least culpable act satisfying the count of conviction." And as the majority admits, the state here has conceded that "use of force" is not an element of the offense before us – at worst, we would consider the least culpable means to be intimidation. The state's concession has essentially foreclosed any argument that the use of the conjunctive "and" in the indictment means we can consider the crime to have been committed using force.

Most of the litany of risks cited by the majority are easily dismissed under the least culpable means approach. Dehydration, malnourishment, and infection are all risks only if the crime proceeds for an extended period. The statute at issue here, however, does not have a temporal aspect, and the crime of "intentionally or knowingly restrain[ing] another person" could be completed in mere seconds. TEXAS PEN. CODE ANN. § 20.02 (Vernon 2002). The least culpable hypothetical scenario under the indictment would be that Riva used deception to lock a minor in a closet for a few

-15-

seconds, and then immediately released her. This would result in a completed crime of unlawful restraint, but no risk of dehydration, malnourishment, or infection.

The final risk of physical injury cited by the majority is the risk of injuries during escape attempts. Again, however, there are hypothetical ways this crime could be completed without such risks. For example, the defendant could have used deception to persuade the minor to be locked in the closet by convincing him or her that the closet was a safe haven from a nonexistent risk such as an intruder in the house. Under that scenario, there is no risk of an escape attempt because the child actually desires and consents to be in the closet. While the child would have given actual consent to the restraint, it would not be legally effective and the crime would be complete. The Texas statute defines restraint to be without consent if it is accomplished by force, intimidation, or deception; meaning that if any of these methods were used the actual consent of the child was legally ineffective. TEXAS PEN. CODE ANN. § 20.01(1) (Vernon 2002). This does not change the fact that where a child desires to be locked inside a closet because of some deception, there is no risk of an injurious escape attempt.

It is also important to note that the culpability of this offense due to the age of the victim is reduced dramatically by the least culpable means approach. As in Houston, because the age is not specified, we must posit that the victim is the least culpable age.

364 F.3d at 246. Under the Texas statute, this least culpable age could be that the victim was one day under seventeen. TEXAS PEN. CODE ANN. § 20.02 (Vernon 2002). This substantially mitigates both the level of culpability and the risks involved in that the child would be mature enough to avoid injuring herself. At the other extreme, we could assume that the child was extremely young and therefore incapable of mounting efforts at escape. In either event, when coupled with the fact that the crime could be completed in seconds, the crime here does not by its nature involve a serious potential risk of physical injury.

Because the majority fails to apply the least culpable means analysis as defined by our prior decisions and because the crime alleged in this indictment could hypothetically have been committed in ways that did not involve a serious potential risk of physical injury to another, I would hold that the crime before us did not "by its nature" present these risks and was not a crime of violence.